PER CURIAM.
Appellant Sherry Thornton initiated this cause against Appellee Dr. S.M. Mahan, Jr., seeking damages for permanent facial dis-figuration allegedly resulting from Dr. Mahan’s negligence in performing a root canal on Ms. Thornton’s tooth, and in his subsequent care and treatment thereof. From a judgment entered upon a jury verdict favorable to Dr. Mahan, Ms. Thornton appeals.
We affirm.
THE FACTS
On July 3, 1978, shortly after an incident in which she fractured a tooth, Ms. Thornton visited the offices of Dr. Mahan for purposes of having her injury treated. Over the course of several visits, Dr. Mahan performed a root canal on Ms. Thornton’s tooth, using a procedure commonly known in the profession as the “Sargenti” method. In November of 1978, a small bump or pimple appeared on Ms. Thornton’s face. During the next two months this facial irregularity persisted, and grew larger. In January 1979, without success, Ms. Thornton tried antibiotics for treatment of her face. Subsequently, a hole developed at the spot of the pimple.
Because of the proximity of the hole and the tooth repaired by Dr. Mahan, Ms. Thornton consulted Dr. William Powell, a dentist in Birmingham, who, in turn, referred Ms. Thornton to Dr. William Buck, an oral surgeon. Upon his examination of Ms. Thornton, Dr. Buck was able to insert a probe into the hole on Ms. Thornton’s face, down to the tooth repaired some months earlier by Dr. Mahan. Dr. Buck performed surgery, whereupon the hole and its related complications healed. In November 1979, a second bump appeared, approximately one inch from the earlier one. At this point, Ms. Thornton was hospitalized for two weeks as a result of her continued facial problem.
Dr. Mahan testified at trial that he had performed some 100 apicoectomies, a procedure for cleaning out granulation areas of an abscessed tooth. Dr. Mahan first became aware of the “Sargenti” procedure in 1974, at a seminar in Birmingham. The procedure utilizes a motorized mechanism for packing the Sargenti “paste” into the repaired tooth, as opposed to the “gutta-percha” and “silver point” methods, which apply their paste by hand.
Dr. Charles R. Yates, a Bessemer, Alabama, dentist and witness for the Defendant, testified that the State Board of Dentistry in Alabama had neither advocated nor prohibited the use of the “Sargenti” procedure. Dr. Yates submitted that, during the course of his practice, he had performed some two to three thousand root canals using the “Sargenti” method.
THE ISSUE
The issue at trial focused primarily on whether Dr. Mahan was negligent in his utilization of the “Sargenti” method. Because this issue of fact was resolved against the Plaintiff, only one issue is dispositive of this appeal: Did the trial court err in its denial of Appellant’s proffered treatise as evidence of the Federal Drug Administration’s rejection of the “Sargenti” method?
THE DECISION
During the course of the proceedings below, Plaintiff called Dr. William Powell, a clinical instructor in crown and bridge work at the University of Alabama in Birmingham, and a practicing dentist in the Birmingham area since 1972. The crux of Dr. *183 Powell’s testimony was aimed at evidencing the university dental program’s disapproval of the “Sargenti” method, and the fact that it is not taught there. While Dr. Powell was testifying to this fact, the following transpired under questioning by Plaintiff’s counsel:
“Q. All right. Since you’ve graduated from the University of Alabama Dental School, up until this date continuously, has the University of Alabama ever taught the Sargenti technique?
“A. Not to my knowledge.
“Q. To your knowledge, has the University of Alabama ever sponsored any workshop or seminar wherein the technique was taught?
“A. Not to my knowledge.
“Q. Does the F.D.A., the Federal Drug Administration, does it approve the utilization of Sargenti paste?
“MR. FERNAMBUCQ: We object to that as hearsay. Certainly there would be records to show whether or not it is. If he has them, we would like to see them.
“THE WITNESS: I have some.
“Q. (continuing) If you would, you may answer then.
“MR. FERNAMBUCQ: If he has the records, all right.
“THE WITNESS: Would you like to see it?
“THE COURT: What date is it?
“THE WITNESS: It’s the T.I.C.
“Q. (Continuing) What is the T.I.C.?
“A. It’s a magazine put out by the Tico-nium Laboratory. It just has some—
“MR. FERNAMBUCQ: (Interposing) Is it a magazine put out by some sales company or agency?
“THE WITNESS: It’s put out by a laboratory.
“MR. FERNAMBUCQ: We object to it as being hearsay, Your Honor. It’s not from the F.D.A. and that’s what he asked him.
“THE COURT: I don’t think you can establish a lab magazine and bind it to the F.D.A.
“THE WITNESS: It’s written by a dentist and an attorney. He’s one and the same.
“Q. It’s regarding a federal regulation?
“A. It’s written here by the editor. The paper is part of 36 annual postgraduate dental seminars sponsored by the association in cooperation with the Department of Public Health.
“THE COURT: Does it state a federal regulation?
“THE WITNESS: It talks about it.
“THE COURT: Does it give a cite on what the number of the regulation is? Does it say when the regulation was promulgated?
“THE WITNESS: It quotes the F.D.A., a guide to dental materials and it talks about the meeting in 1975 of the F.D.A. and—
“THE COURT: (Interposing) That’s not what I’m asking. I’m asking if in that article they make a reference to a specific regulation that might have been promulgated at a particular time by the Food and Drug Administration. Otherwise, it’s hearsay. In other words, what you’re reading is what somebody else’s opinion is. Do you see what I’m talking about?
“THE WITNESS: I’m not familiar with it.
“THE COURT: For dental purposes, it might be fine, but for legal purposes, we can’t allow it. That’s what I’m saying.”
Had the professional laboratory pamphlet been proffered as a learned treatise, grounded upon a proper predicate within the contemplation of the rule, Appellant’s contention that the trial court erred in denying its admission on grounds of hearsay, would be correct. Within prescribed limits, this State’s policy towards admission of learned treatises, essays, or pamphlets on subjects of science and the arts, as exceptions to the hearsay prohibition, is well established. C. Gamble, McElroy’s Alabama Evidence § 258.01 (3d Ed.1977), states
“A learned treatise, essay or pamphlet on the subject of science or art, which is *184 testified to by an expert on the subject as being the standard or trustworthy authority on the subject, is admissible as an exception to the hearsay evidence rule.”
As a dental pamphlet, evidencing attitudes of that profession towards utilization of the “Sargenti” method, Plaintiff had the right, within the prescription of the rule, to admit into evidence the proffered publication. Here, however, the evidence of record makes clear that the proffer of this pamphlet was merely in furtherance of the Appellant’s original question: “Does [the F.D.A.] approve of the Sargenti method?” Clearly, that question, asked of Dr. Powell, was inadmissible as hearsay. Likewise, the T.I.C. pamphlet was inadmissible because of the lack of a proper predicate qualifying the proffered document as a “learned treatise.” Indeed, a careful reading of the record discloses that Appellant’s trial counsel did not attempt to invoke the “learned treatise” exception to the hearsay rule.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.